JONES, Justice.
This appeal by Plaintiff challenges the judgment entered on Defendant’s counterclaim.
Appellant’s version of the facts is as follows:
*1023 “This litigation involves a business dispute that arose from a transaction between plaintiff Southeastern Machinery and Equipment Company, Inc. (hereinafter called Southeastern) and defendant ABC Parts, C.A. Southeastern is a business located in Gadsden, Alabama, that reconditions and sells used heavy machinery. ABC Parts is a Venezuelan corporation that exports heavy equipment, buying it in the United States and selling it in Venezuela. ABC Parts placed an order to purchase some used Hyster forklifts reconditioned according to certain specifications.
“Southeastern’s evidence was that ABC agreed to buy six forklifts and placed their initial order for three of them. ABC specified using 371 GM diesel engines in their initial order, but, after Southern had built the units with these engines, ABC called and requested that the engines be changed to 353’s, a different size engine, giving as a reason that their South American customer insisted on 353’s. A revised purchase order showing this change was sent by Southeastern to ABC, and Southeastern then did the considerable work necessary to change out the engines pursuant to this request. They had completed the modifications on one of the forklifts when Southeastern ceased work on the machines because of ABC’s refusal to place their order and pay their deposit for the three additional machines, as their original agreement had called for. After Southeastern’s written demand for this payment went unmet, it declared the earnest money deposited with the initial order forfeited, and then filed the complaint in this case for the recovery of its expenses involved in making the engine changes.”
Appellee’s brief contains a different version:
“On 21 June 1979, ABC placed an order with Southeastern for three Hyster forklifts. The order was written on a form used by Southeastern. The purchase price of the machines was $67,500.00, of which $30,000.00 was paid with the order. There are two versions of what later occurred. The jury obviously had no difficulty in believing the version told by the representative of ABC; they required less than fifteen minutes to agree upon a verdict for ABC in the full amount of its counterclaim.
“ABC is a company which, for over twenty years has been in the business of buying heavy equipment in the United States and selling it in Venezuela. During its twenty years in that business, it has dealt only once with Southeastern and came to do so by means of advertisements which Southeastern placed in a trade publication. ABC had a customer in Venezuela which was interested in purchasing forklifts of the sort which Southeastern was advertising for sale and, upon seeing them advertised, Mr. Jack Baigleman got in touch with Mr. Fountain by telephone. In that conversation, he asked Fountain about three units and specified five things which were important to him: that the units be either Clark or Hyster; that they be able to lift 20,000 pounds; that they have maximum height lift capacity; that a speedy delivery time be agreed upon; and, that the engine be rebuilt and the entire unit be refurbished and in excellent condition.
“At Fountain’s insistence, Messrs. Jack and Jules Baigleman came to Gadsden to look over Southeastern and select the units which they wanted. When there, Fountain showed them what appeared to be piles of scrap, which they were assured would be rebuilt into three forklift trucks ‘as good as new.’ After they made their selection, Fountain gave them two pieces of paper (put in evidence as defendant’s exhibits 3 and 4), which showed, respectively, the specifications of the units and the price charged and the work which would be done on them in the way of rebuilding. The purchase order, prepared by Southeastern personnel, clearly showed that the machines were to have 20,000 pound lift capacity and were to be fitted with Detroit Diesel Series 371 engines.
*1024 “The total sales price for the three units was $67,500.00; the Baiglemans gave Fountain a check for $30,000.00 as a deposit on the purchase price of the machines. These trucks were purchased by ABC on a specific order for a client. Thirty days were agreed upon as the time within which the trucks would be rebuilt and made ready for delivery.
On 17 July, when Jack Baigleman reached Fountain by telephone, he was informed for the first time by Fountain that the engines which Southeastern originally specified, the Series 371, would not fit into the machines. Fountain suggested the Series 353 engine as a substitute. Baigleman told Fountain that the forklifts were sold already and that he would try to get his client to agree to the exchange. ABC’s client rejected the 353 engine, and Baigleman, who was having great difficulty in getting through to Fountain, so informed Fountain on 27 July. Six days later, Fountain said to Baigleman, again on the telephone, that he would have to accept the forklifts with the 353 engines or get nothing at all. In ‘plain English,’ Fountain told Baigleman that he would have to take the unacceptable engine or ‘go to hell.’ Furthermore, Fountain, in the same conversation, when told by Baigleman that ABC would have to take legal action, said that he (Baigle-man) would ‘have to stand in line,’ that he had ‘many suits in court’ at that time, and ‘that he did not fear another one.’
“ABC did not have to stand in line. On 30 November, 1979, Southeastern filed this action against ABC, claiming $9,500.00 for breach of contract and misrepresentations.” (Emphasis in original.) [1]
The essence of the factual dispute centers around that portion of the agreement relating to the size of engine to be used in the forklifts. Southeastern says ABC initially ordered the larger 371 GM diesel engine and then changed its mind, stating that its South American customers insisted on the 353. Southeastern contends that the dispute arose after it had completed the modification on one unit and ABC refused to return the revised purchase order.
ABC, on the other hand, agreeing that it placed an order for the Series 371 engine, says that it was Southeastern who suggested the Series 353 engine as a substitute because the larger unit would not fit into the forklift, and that, after agreeing to try to get its customer to accept the exchange, ABC informed Southeastern that its purchaser rejected the 353 engine.
Appellant states the primary issue presented thusly:
“WHETHER THE TRIAL COURT CORRECTLY OVERRULED PLAINTIFF’S OBJECTION TO HEARSAY TESTIMONY THAT A THIRD PARTY REJECTED AN ENGINE.”
We quote now the pertinent testimony (to which the trial court overruled Southeastern’s hearsay objection) directly from the record:
“A He informed me at that time that the engine he sold us, which was Detroit diesel engine number 371 series, could not fit into the forklifts. He suggested that we accept engines number 353 as a replacement.
“Q What did you say about that?
“A We informed him that these three forklifts were sold and that we had received a deposit from our client, but that we would make a very serious attempt to sell our client on using the engine number 353 as a substitute.
“Q Did you try to do that?
“A We tried. Our client .. . rejected this.”
The central thrust of Southeastern’s argument is that ABC’s rejection of its counteroffer was predicated upon something ABC’s South American client said, and that the trial court erred in allowing ABC’s *1025 agent to repeat in court an out-of-court statement. Southeastern’s characterization of this testimony as hearsay is misplaced. Indeed, we do not have to find the source of its admissibility in an exception to the hearsay rule, because the rule itself is not invoked.
The witness’s statement amounted to nothing more than the act of rejection of Southeastern’s counteroffer. The fact that ABC sought an agreement from its South American customer to accept the modified purchase order, and that ABC’s ultimate rejection of the counteroffer was premised on its customer’s failure to so agree, does not change the nature of the challenged evidence. It was a statement of what occurred; a direct statement of operative fact; a communication of ABC’s nonacceptance of Southeastern’s counteroffer.
Suppose, for example, ABC’s agent had said, simply, “I’m sorry, but we cannot accept your proposed modification of the purchase order. Our order for the 371’s stands, or the contract is cancelled.” Surely, language substantially the same — rejecting the counteroffer — is not rendered inadmissible as hearsay merely because it is accompanied by an explanation of the client’s failure to agree upon the engine exchange. For an excellent discussion of the applicable rule and a collection of the authorities, see C. Gamble, McElroy’s Alabama Evidence, § 242.01 (3d ed. 1977); see, also, McCormick on Evidence, § 584.
We have carefully considered each of the remaining issues presented and find no merit in them.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.

. We do not mean to imply that either of the respective parties denies the other’s version of the evidence. We have chosen this format because it clearly demonstrates the factual dispute context within which the issues are presented.